[Civ. No. 3640. First Appellate District, Division One.—January 21, 1921.]

CLARA STOCKTON, Special Administratrix, etc., et al., Appellants, v. JOHN HIND et al., Defendants; HIND RANCH COMPANY, INC. (a Corporation), et al., Respondents.

[1] FRAUD—EXPRESSION OF OPINION—RELIANCE UPON—WHEN ACTIONABLE.—An expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and although false, does not amount to actionable fraud. Ordinarily a person has no right to rely upon such statements, and if he does so rely, he cannot treat them as fraudulent, either for the purpose of maintaining an action in damages for deceit, or for the purpose of rescinding the contract.

[2] ID.—NATURE OF REPRESENTATION—QUESTION OF FACT.—Where there is any doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of· fact, the question is one not of law but of fact for the court or jury.

[3] ID.—STATEMENT OF VALUE—WHEN ACTIONABLE—INTENTION OF PARTIES.—A statement as to the value of property is not always made as a mere expression of opinion upon which the other party has no right to rely. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made; and when it is such, it is like any other misrepresentation of fact, and may be a fraudulent misrepresentation warranting rescission.

[4] ID.—HONEST EXPRESSIONS OF OPINION—EQUITY.—While expressions of opinion honestly made are not actionable, and equity has no concern with them, a false statement of an opinion expressed to one entitled to rely upon it may form the basis of an action for deceit, like any other misrepresentation of fact.

[5] ID.—DUTY OF VENDEE TO MAKE INVESTIGATION—RELIANCE UPON FALSE STATEMENTS.—Where material statements of fact are made to a vendee by a vendor, the vendee is under no obligation to verify and investigate the statements; and if they be false and the vendee suffers from his reliance thereon, he is entitled to relief, but if the vendee makes an investigation of the property on his own account, he cannot rely upon the representations.

[6] ID.—FAILURE TO MAKE INVESTIGATION—EXCUSE FOR.—Where a husband and wife, parties to a contract for the exchange of real properties, visit the property which they are to receive in exchange and are afforded an opportunity to inspect the same, but no such

*inspection is in fact made by reason of the illness of the husband and the inexperience of the wife in business affairs, this may properly be regarded as a sufficient excuse for their not having made such inspection.*

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

Archibald J. Treat for Appellants.

J. J. Dunne and McCutchen, Willard, Mannon & Greene for Respondents.

KERRIGAN, J.—This is an appeal by the plaintiffs from a judgment following an order sustaining the defendants' demurrer to the second amended complaint without leave to amend in an action for the rescission of a contract on the ground of fraud.

Stripped of its legal verbiage, and as stated by the plaintiffs in their opening brief, the averments of the second amended complaint may be summarized as follows: The plaintiffs are husband and wife. The defendants are the Hind Ranch Company, the California Pacific Title Insurance Company, the Hind Company, Inc., a corporation, Alice R. Hind, George U. Hind, and C. P. Chamberlain. In May, 1916, the plaintiffs were the owners of a 1,180 acre tract of land in Merced county. The defendant John Hind was the owner of 335.02 acres of land in Napa County. The property of the plaintiffs was subject to a first mortgage in the sum of $40,000, accrued interest in the sum of about $3,000, and water rates of about $1,800; said property and other property of the plaintiffs was also subject to two deeds of trust in about the sum of $26,500, and certain judgments or attachments not exceeding the sum of $1,000. By the terms of an agreement (exhibit "A" attached to the complaint) the plaintiffs and John Hind were to exchange their properties, the latter to pay the amount due under said deeds of trust but not to exceed $26,500, and said judgment and attachment liens not to exceed the sum of $1,000, which sums were to be

secured by a two-year deed of trust upon the Napa County property which the Stocktons were to acquire in exchange for their Merced property. The personal property upon the Napa County land was to go with it, but the plaintiffs were to give a chattel mortgage thereon to Mr. Hind. It was further provided that the net proceeds of timber cut upon said Napa County land were to be applied to the liquidation of the indebtedness of the plaintiffs.

The complaint further alleges that the holders of one of the deeds of trust had advertised the Merced property to be sold on May 22, 1916; that ten days previous to said advertised date of sale the defendant John Hind had proposed to plaintiffs the exchange of the lands referred to, and had made to them the following express statement of existing facts: "That the reasonable market value of his said land and property in Napa County, hereinabove referred to in paragraph V, was at least the sum of $75,000, and that there was timber and cordwood upon his said land of such a value that the same could be marketed at a profit to the plaintiffs of $55,000; and that although plaintiffs would be required to give a mortgage of about $30,000 upon the Napa County lands to effect the exchange contemplated, the sale of the timber and cordwood would bring enough to liquidate this mortgage, and that plaintiffs thereupon would acquire title to the said Napa County lands free and clear of all encumbrances in return for their equity in the said Merced County lands."

The plaintiffs knew nothing concerning the Napa County property. They visited it for the first time two days after the proposition was made them by Mr. Hind, and they were upon it but two hours. Mr. Stockton was ill and unable to inspect it, and the time was too short for Mrs. Stockton to do so. The plaintiffs had implicitly relied upon the statements of Mr. Hind and his reputation for business integrity. At the time of the negotiations Mr. Stockton was about eighty-four years of age and feeble. His wife was inexperienced in business affairs, and was without knowledge or experience as to the value of the Napa County property, or of the cord or timber wood upon it. John Hind, taking advantage of the great age of Mr. Stockton, and knowing that they believed in him and his good reputation, and knowing that the represen-

tations made by him as to the value of the Napa County lands were false, and that they were not worth $75,000,—in fact, not worth to exceed $15,000,—and that the timber thereon was not worth $30,000—in fact, not worth to exceed $1,000,—fraudulently made the representations referred to for the purpose of inducing the plaintiffs to exchange their Merced County land for a grossly inadequate consideration. That relying upon the truth of the representations of Mr. Hind the agreement (exhibit "A") was signed on May 20, 1916, and on June 1, 1916, the plaintiffs deeded their land to Mr. Hind and executed papers necessary to carry said agreement into effect, and received from him a deed to his Napa County land.

There was no income from the Napa County property, and the Stocktons had no other property. Because of his great age Mr. Stockton was unable to support himself by labor, and his wife had to labor to support him. She was employed in Merced and Stanislaus Counties from the date of the exchange to December, 1918. At no time did she reside upon the Napa County property, and only visited it infrequently. In May, 1917, she suffered a fractured skull which physically incapacitated her; yet even before she had fully recovered from her accident, and for some time thereafter, she unsuccessfully endeavored to let a contract for the cutting of wood upon the Napa Valley property. In October, 1917, the plaintiffs gave to certain of the defendants permission to cut, remove, and sell timber and cordwood from the Napa property, the net proceeds to be credited upon plaintiffs' indebtedness. Two thousand dollars was to be advanced by John Hind, Alice R. Hind, and the Hind Company for cutting, removing, and selling the timber and wood; the latter was to be sold by the Hinds, who, after reimbursing themselves for said advance and interest at seven per cent, were to credit the indebtedness of the plaintiffs with anything remaining. If the wood could not be sold at a profit the plaintiffs were nevertheless to repay all sums advanced, with interest. The plaintiffs were denied the right to themselves cut, remove, or sell timber or wood. Pursuant to this agreement the Hinds cut, removed, and sold a portion of the timber and cordwood, but for a long time, i. e., from October 31, 1917, the date of the agreement, to July,

1918, refused to account to the plaintiffs. In July, 1918, plaintiffs for the first time learned that if the whole of the timber and cordwood upon the Napa property were cut and sold the net proceeds therefrom would not exceed $1,000 instead of the sum of $30,000 which they were induced to believe by John Hind would be the net derivable amount. This information as to the timber and cordwood led the plaintiffs to make inquiry as to the truth of the statements of John Hind as to the Napa land, the discovery that they could not pay off the indebtedness to John Hind from the sale of timber and cordwood, and that they parted with their $80,000 equity in the Merced land for lands in Napa County without value over the deed of trust thereon given to Hind. Promptly upon discovery the plaintiffs notified John Hind that they rescinded the agreement of exchange, offered to reconvey the Napa land and to reimburse him for advances and improvements, and to restore him to his original status, which offer Mr. Hind refused. The plaintiffs further offered to do all things which in equity and good conscience they ought to do to restore John Hind and the other defendants to their original status, providing only that the defendants likewise did equity to the plaintiffs. The defendant John Hind parted with his title to the Merced County land in favor of the defendant Hind Ranch Company, Inc., and the plaintiffs, to secure their obligation to repay John Hind, conveyed their title in the Napa County land to the California Pacific Title Insurance Company as trustee.

The stockholders of the Hind Ranch Company are John Hind, George U. Hind, and C. P. Chamberlain, said three persons also constituting its board of directors, and each of these individuals had knowledge that the representations of John Hind were false and fraudulent, and that they were made with fraudulent purpose and intent. At the time John Hind refused to rescind the agreement of exchange the plaintiffs did not know that he had parted with his title to the Merced County land.

The principal point raised by the demurrer and discussed in the briefs is that the complaint fails to state a cause of action in that it does not disclose that Hind made any misrepresentation as to a material fact. In support of the ruling of the court upon the demurrer it is

argued that the averments that said defendant represented that the reasonable market value of the property to be conveyed to the plaintiffs was $75,000, and that the sale ·of the timber and cordwood that could be cut therefrom would bring enough to liquidate the mortgage which the plaintiffs, as a part of the transaction, were to give upon said land were not statements of fact but merely expression of opinion.

[1] It is conceded that the general rule is that an expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and although false, does not amount to actionable fraud. Ordinarily a person has no right to rely upon such statements, and if he does so rely, he cannot treat them as fraudulent, either for the purpose of maintaining an action in damages for deceit or for the purpose of rescinding the contract. [2] Where there is any doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of fact, the question is one not of law but of fact for the court or jury. (20 Cyc. 15 et seq.; *Spreckels* v. *Gorrill,* 152 Cal. 395, [92 Pac. 1011]; 14 Am. & Eng. Ency. of Law, 36.)

[3] The defendant Hind is charged in the complaint with making a fraudulent express statement of material existing facts. He is alleged to have stated not as a matter of opinion but as a fact that the reasonable market value of the property was $75,000, and that the cordwood on the premises was worth in effect a certain amount. That such may be regarded as representations of fact is supported by numerous authorities. "A statement as to the value of property is not always made as a mere expression of opinion upon which the other party has no right to rely. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. When it is such, it is like any other misrepresentation of fact, and may be a fraudulent misrepresentation warranting rescission. The rule in regard to this matter is stated by Mr. Pomeroy as follows: 'Wherever a party states a matter which might otherwise be only a matter of opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and

act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.' (2 Pomeroy's Equity Jurisprudence, sec. 878.) He further says that the statements which most frequently come within this branch of the rule are those concerning value." (*Crandall* v. *Parks,* 152 Cal. 776, [93 Pac. 1018].)

[4] "True, of course, it is that expressions of opinion honestly made are not actionable. Equity has no concern with them. But equally true it is that a false statement of an opinion expressed to one entitled to rely upon it may form the basis of an action for deceit, like any other misrepresentation of fact." (*Phelps* v. *Grady,* 168 Cal. 77, [141 Pac. 926].)

"The rule that mere expressions of opinion cannot constitute actionable fraud is, no doubt, subject to some qualification. A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be nonexistent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion." (*Henry* v. *Continental Bldg. etc. Assn.,* 156 Cal. 680, [105 Pac. 96].)

Defendants further contend in effect that even if it be conceded that the representations in question were of matters of fact, still since the complaint shows that the plaintiffs inspected the property, they are chargeable with such information and knowledge as would ordinarily flow from such inspection. [5] It is true that where material statements of fact are made to a vendee by a vendor, the former is under no obligation to verify and investigate the statements; and if they be false and the vendee suffer from his reliance thereon, he is entitled to relief. But if the vendee make an investigation of the property on his own account, he cannot rely upon the representations. [6] Here, however, it is shown by the complaint that while the plaintiffs visited the property and were afforded by the defendants an opportunity to inspect the same, no such inspection was in fact made by reason of the illness of Mr. Stockton and the inexperience of Mrs. Stockton in business affairs, which may properly be regarded as a sufficient excuse for their not having made such inspection. The complaint shows that the defendant Hind made certain

false representations of fact concerning the Napa County property, which the defendants knew to be false, and that they were made for the purpose of inducing the plaintiffs to enter into an agreement to convey their property for a grossly inadequate consideration; that relying upon these statements they entered into the agreement, and later the contemplated exchange of properties was made. Here are all the allegations necessary to constitute a cause of action based on fraud. (Civ. Code, sec. 1572; *Dow* v. *Swain,* 125 Cal. 683, [58 Pac. 271].)

Nor can it be held from the allegations of the complaint that the plaintiffs acquiesced in the fraud alleged to have been practiced upon them. There can be no doubt that the alleged facts entitle the plaintiffs to the relief demanded; and we are also satisfied that no argument is necessary to show that the plaintiffs were guilty of no laches. While considerable time elapsed between the making of the exchange and the commencement of this action, the facts pleaded show ample excuse for the delay. Upon the discovery of the fraud the action was promptly commenced.

It follows that the court was in error in sustaining the defendants' demurrer to the second amended complaint. The judgment entered thereon is reversed, and the trial court is directed to overrule said demurrer and permit the defendants to make answer to the said complaint.

Richards, J., and Seawell, P. J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 21, 1921.

All the Justices concurred.