[S. F. No. 10027. In Bank.—August 2, 1923.]

## JOHN H. FRENCH, Respondent, v. ADDIE V. FREEMAN, Appellant.

[1] FRAUD—RESCISSION OF CONTRACT—REPRESENTATIONS—FINDINGS— EVIDENCE.—In this action by a vendee for the rescission of a contract of purchase of farming land on the ground of fraud, the evidence was sufficient to support the findings of the trial court to the effect that defendant falsely represented the character and productivity of the soil and the price she had received for a crop of pears the year before the making of the contract, and that plaintiff was ignorant, unacquainted, and unfamiliar with farming, agricultural pursuits, fruit-raising, and lands and soils and the qualities or fitness thereof.

[2] ID.—EXPRESSION OF OPINION—STATEMENT OF FACT—QUESTION FOR TRIAL COURT.—What amounts to an expression of opinion as compared with a positive statement of fact depends upon all the circumstances of the case, and is a question for the trial court to determine.

[3] ID. — REPRESENTATION — FINDING — APPEAL. — In such an action, where the trial court, upon sufficient evidence, found that defendant stated, as a fact, that the land in question was the finest sediment soil, such finding is binding on appeal.

---

2. Statement of opinion as being generally not fraudulent, note, 35 L. R. A. 417.

[4] ID.—STATEMENT BASED ON ALLEGED FACTS—CHARACTER OF.—A statement of what might otherwise be an opinion, if based on alleged facts, is a statement of fact and not a statement merely of an opinion.

[5] ID. — RELIANCE ON REPRESENTATIONS — DUTY TO INVESTIGATE EXCUSED.—Plaintiff having relied upon the representations made by defendant to him concerning the character and productivity of the soil, he (plaintiff) was not under any obligations to investigate and to verify their truth.

[6] ID.—VISIT TO PREMISES—EFFECT UPON RIGHT TO RELY UPON REPRESENTATIONS WITHOUT INVESTIGATION—EVIDENCE.—The right of plaintiff to rely upon the representations of fact made by defendant concerning the character and productivity of the soil without making an investigation and verifying the truth of such representations is not destroyed by the fact that he visited the premises in question before entering into the contract of purchase, where he was not competent to judge the quality of the land.

[7] ID.—RESCISSION—DILIGENCE—QUESTION OF FACT.—Whether or not the defrauded party has rescinded "promptly" depends upon all the circumstances of the particular case, and is a question primarily for the trial court.

[8] ID.—DISCOVERY OF ONE INSTANCE OF FRAUD—NOTICE—FACT.—The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is a question for the trial court to determine.

[9] ID.—RESCISSION—LACHES—FINDING—EVIDENCE.—In such an action, the trial court was justified in holding that plaintiff offered to rescind within a reasonable time after he discovered the facts which entitled him to rescind.

[10] ID.—WAIVER OF FRAUD—SUFFICIENCY OF FINDING.—In such an action, a finding "that plaintiff did not, after the discovery of the said fraud and falsity of the representations which the court finds were made by defendant waive said fraud or affirm the said contract or sale as alleged in defendant's amendment to her answer filed herein or by any other act or conduct on the part of plaintiff," was a sufficient finding that the plaintiff did not waive the fraud.

[11] ID.—WAIVER OF FRAUD—QUESTION FOR TRIAL COURT—APPEAL.— In such an action, the question of waiver or nonwaiver of the

5. Right of vendee to rely upon representations by vendor as to quality and condition of soil, notes, Ann. Cas. 1912A, 405; L. R. A. 1917C, 273.

Right to rely on positive statements of facts, note, 37 L. R. A. 609.

fraud was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver; and it cannot be said on appeal, as a matter of law, that plaintiff intended to and did waive the fraud complained of.

[12] ID. — RATIFICATION OR AFFIRMANCE OF CONTRACT — INTENTION — EVIDENCE.—Whether or not a person has ratified a voidable contract, or 'elected to affirm it rather than to rescind it, depends primarily upon his intention, and this is shown by his declarations, his acts, or his conduct, which are matters of fact for determination by the jury.

[13] ID.—PLEADING—EVIDENCE.—In such an action, where the complaint charged that defendant falsely stated that the property had in a given year produced pears of the reasonable value of sixteen hundred dollars, for which sum they were sold, when in fact they were sold for a sum not exceeding one thousand dollars, and an issue was raised by the denial of such allegations, evidence that the defendant received one thousand dollars for the pears "on the trees" in said year was properly admissible.

[14] ID.—FINDINGS.—In such an action, it was not necessary that the trial court should make a finding as to each ground of fraud alleged in the complaint, since if the findings in plaintiff's favor as made support the judgment, as they do, a finding against him upon the remaining charges of fraud would not affect his right to the relief given.

[15] ID.—OFFSET—FINDINGS—JUDGMENT.—In such an action, it must be presumed on appeal that the trial court took into consideration the fact that plaintiff received a stated sum of money on the sale of a pear crop shortly before rescission when it found "that there is due from plaintiff to defendant the sum of three hundred dollars, being the difference between the value of the said personal property sold by plaintiff, together with the value of the use by plaintiff of all the property conveyed to plaintiff by defendant, and the interest due to plaintiff on the purchase price paid by him to defendant"; but in any event, since the plaintiff, in the calculation by which the amount of the offset due to the defendant was found, was charged with the value of the use and occupation of the premises for the time he was in possession, he could not also be charged with the proceeds of said pear crop.

APPEAL from a judgment of the Superior Court of Santa Clara County. F. B. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Rea, Cassin & Caldwell for Appellant.

Louis Oneal, Maurice J. Rankin and James P. Sex for Respondent.

KERRIGAN, J.—This is an action for rescission of a contract of sale of fourteen acres of land near San Jose, upon the ground of the alleged fraud of the defendant in inducing the plaintiff to enter into the contract.

Briefly, the facts of the case are as follows: The defendant inserted an advertisement in a local newspaper offering the land in question for sale for $18,000, and describing it as being the finest sediment soil and possessing the best artesian well in the county. Plaintiff saw this advertisement, and, accompanied by his wife and two men, none of whom were farmers by vocation, he called upon defendant at the farm on the morning of March 27, 1920. Defendant's son, Dr. Freeman, acting for her, showed the plaintiff and his friends about the place, and, in the course of the conversation which ensued, certain representations, charged to be untrue, were made. Plaintiff and his friends returned to the farm in the afternoon, when plaintiff paid a deposit of $200 on the purchase price, which was $18,000. On March 28, 1920, plaintiff moved on the land, and on this day he made a further payment of $7,300, and gave his note, secured by a trust deed, for the balance of the purchase price. On July 29, 1920, plaintiff, through his attorney, served on defendant a formal notice of rescission, claiming that the property did not conform to the representations made by the defendant. The following week defendant commenced proceedings to have the land sold under the terms of the trust deed, and shortly thereafter the present action was brought.

The alleged misrepresentations, as set out in the complaint as constituting the grounds of fraud, are: (1) That the character of the soil was suitable for raising pears and that it was "the finest sediment soil"; (2) that the land was well and abundantly watered by means of a well and pump which would supply sufficient water to sell to adjoining neighbors in addition to that needed for the irrigation of the entire tract of land; (3) that the poultry on said premises consisted of at least 250 chickens of good quality and breed; and (4) that said property had in the year 1919 pro-

duced pears of the reasonable value of $1,600, and that said crop was sold for $1,600.

The trial court, sitting with an advisory jury, found that to induce plaintiff to enter into said contract for the purchase of said property, defendant immediately prior to making the said contract and sale, represented and stated to plaintiff as follows: That all of said land was of the finest sediment soil and that the said land was fitted for the growing and production of pear trees, and that pear trees would produce good crops of pears on all of said land; that said land and soil had been analyzed and that a sample of same had been sent to the University at Berkeley, California; that such analysis showed all of said land and soil to be the finest sediment soil and fitted for the growing of pear trees and the production of pears; and that defendant further represented and stated to plaintiff that said property had in the year 1919 produced pears of the reasonable market value of $1,600; that the pear crop produced by said property in the year 1919 was sold by defendant for the sum of $1,600; that $1,600 was paid to defendant for the said crop of pears on the trees; that said representations were of facts material to said contract and sale and materially affected the value of the said property sold to plaintiff, and plaintiff believed and relied on said representations and statements made by defendant as aforesaid and was induced by same to enter into said contract and to purchase said property; that all of said representations and statements so found to have been made by defendant to plaintiff were false and known by defendant to be false when made by her, and were made by her to deceive plaintiff and to induce him to enter into said contract and to purchase said property.

There were also findings that plaintiff had never been a farmer or orchardist by vocation or otherwise nor had experience in farming, fruit-raising, or in the work of an orchardist, and at all times plaintiff was ignorant, unacquainted, and unfamiliar with farming, agricultural pursuits, fruit-raising, and lands and soils and the qualities or fitness thereof, and plaintiff was not capable of judging the character of said land for himself and did not know its true quality or character; that three days prior to the said contract between plaintiff and defendant, plaintiff's five-year-old son had died and the day before said agreement

was made plaintiff had buried his said child, and because of the death and loss of his said child plaintiff was at the time when said representations were made by defendant and said land was purchased on the verge of a nervous breakdown and suffering from nervous and mental disturbances and was ill in body and mind, and not in condition of body or mind to properly investigate or determine the real value or character of said property, or the truth of the said representations of defendant; that if said land had been of sediment soil, as represented by defendant, all of it would have been reasonably worth $1,000 an acre, but that a portion of said land, consisting of 5.75 acres, which was and is alkali and marsh land, was and is not reasonably worth more than $100 an acre, and the entire property sold to plaintiff is not now and was not at the time of said sale reasonably worth more than $8,000.

In accordance with these findings judgment was entered in favor of plaintiff rescinding the contract, canceling the promissory note, and awarding plaintiff $7,200 in cash. It was also decreed that plaintiff restore to defendant all the property, real and personal, except the personal property which plaintiff had sold, and that the defendant be restrained from selling the real property under the terms of the trust deed.

[1] Defendant strongly attacks the findings of the court as unsupported by the evidence, but we are bound by these findings, if there is sufficient evidence in the record to support them. Plaintiff testified as follows: ''The defendant told my wife when I bought the place that I would buy all the finest sediment soil, I seen the ad sediment soil and she said it was sediment soil. I was not accustomed to soils, and I had always heard sediment soil was good soil, and I thought it was A–1. She did not say it was only part sediment soil . . . Dr. Freeman said it was all fine sediment soil; that he had it sent to Berkeley and had it analyzed, and got a report on it, and it was the best pear soil in the state. They did not say anything about the front portion of the land being different soil. This statement about the soil being analyzed was made in the presence of the defendant . . . I made no further examination. I was broken down and sick over the death of my boy. I paid the $200 after I had heard the statements made by Dr. Freeman and the defendant concerning which I testified. I believed these statements. If

I had not believed these statements to be true I wouldn't have purchased the place . . . I know nothing of soils. I never did any farming.'' Plaintiff further testified that Dr. Freeman told him that he had sold the 1919 pear crop for $1,600 on the trees, and it was proved at the trial that defendant only received $1,000 for the 1919 pear crop on the trees.

These few extracts from the plaintiff's testimony show that there was sufficient evidence in the record to support those findings which we have quoted above, and particularly the findings that the defendant made the representations as to the character of the soil, and also to support the further finding that plaintiff was ignorant, unacquainted, and unfamiliar with farming, agricultural pursuits, fruit-raising, and lands and soils and the qualities or fitness thereof.

Defendant contends that the statement that the land was good for raising pears and that it was the finest sediment soil were matters of opinion. The statement that the land was good for raising pears might have been a mere expression of opinion, but we cannot say that the statement that the land was the finest sediment soil was an expression of opinion. [2] What amounts to an expression of opinion as compared with a positive statement of fact depends upon all the circumstances of the case, and is a question for the trial court to determine. (*Hodgkins* v. *Dunham*, 10 Cal. App. 690 [103 Pac. 351] ; *Stockton* v. *Hind*, 51 Cal. App. 131 [196 Pac. 122] ; 26 C. J. 1083.) In *Stockton* v. *Hind*, 51 Cal. App. 131, 136 [196 Pac. 122, 124], the court said: ''It is conceded that the general rule is that an expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and although false, does not amount to actionable fraud. Ordinarily a person has no right to rely upon such statements, and if he does so rely, he cannot treat them as fraudulent, either for the purpose of maintaining an action in damages for deceit, or for the purpose of rescinding the contract. Where there is any doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of fact, the question is one not of law but of fact for the court or jury.''

[3] The trial court here found that defendant stated, as a fact, that the soil was the finest sediment soil, and we

are bound by that finding. Furthermore, the misrepresentations of the defendant relative to the character of this land were based upon the further statement that the soil had been analyzed and that such analysis showed the land to be of the character represented, and fitted for the production of pears. [4] And it is well established that a statement of what might otherwise be an opinion, if based on alleged facts, is a statement of fact and not a statement merely of an opinion. (*Tracy* v. *Smith*, 175 Cal. 161, 165 [165 Pac. 535]; *Brandt* v. *Krogh*, 14 Cal. App. 39, 49 [111 Pac. 275]; *Winkler* v. *Jerrue*, 20 Cal. App. 555, 560 [129 Pac. 804].) In *Tracy* v. *Smith* the court said: "Hence, considered alone, the statement that the land was 'absolutely free from frost' might be deemed merely a prediction or an expression of Mizener that in his opinion the locality would never be subject to frost. It was, however, a positive representation by one assuming to have knowledge of the subject, based upon a statement known by him to be false in fact, that, 'a damaging frost had never been known in that neighborhood,' which, if true, when made in connection with the statement that the property was absolutely frostless, warranted the making of the latter and gave it the character of a like statement of fact rather than a mere opinion."

[5] Plaintiff testified that he relied on these representations, and we do not believe that he was under any obligations to investigate and to verify their truth. In *Teague* v. *Hall*, 171 Cal. 668, at 670 [154 Pac. 851, 852], it is said: "We think it must be held that the court erred in directing the jury, as it did in effect, that a party who has relied upon a misrepresentation made by another and has suffered injury thereby is precluded from recovering, if he had an opportunity, and did not avail himself thereof, to test the truth of the representations by independent investigation. Some of the earlier cases state the rule in this broad way, but, as Mr. Bigelow says in his work on Fraud, volume 1, page 523, 'the proposition has now become very widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were specially open to him. . . . ' Similarly in Pomeroy's Equity Jurisprudence, section 896 [895], it is said that 'whenever a positive representation of fact is made, the party

receiving it is, in general, entitled to rely and act upon it, and is not bound to verify it by an independent investigation. Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The *mere existence of opportunities* for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred; the doctrine of constructive notice does not apply where there has been such a representation of fact.' ''

[6] Defendant argues that in the case of *Teague* v. *Hall, supra,* no inspection of the land was made, hence the rule there laid down that a vendee has a right to rely on the express statement of the vendor is not applicable. This contention is untenable. If the defrauded party is not competent to judge the quality of the land, we do not see that it can make any difference whether or not he actually visits the premises. Assuming that if plaintiff had not visited the land he would be entitled to rely upon the representations, it would be unreasonable to say that he would not likewise be entitled to rely upon the representations, even though he visited the land, if, as a matter of fact, by reason of his inexperience and ignorance, he was incompetent to judge the quality of the soil. In other words, the fact that the vendee visited the land is important in determining whether he relied and was entitled to rely upon the statements of the vendor. It is apparent that a vendee who actually knew the character of the soil on the land which he inspected would not be heard to say that he relied upon the statements of the vendor; but where it is shown that the vendee was unacquainted with soils, the fact that he visited the land does not preclude him from saying that he relied upon the vendor's statements. In *Beggs* v. *Spalding,* 56 Cal. App. 21 [204 Pac. 429], cited by the defendant, the person claiming to have been defrauded not only visited the land, but had experts inspect and examine it. The people who accompanied plaintiff on his inspection of the land were not experienced farmers, nor is there any showing made that they were there

to assist plaintiff, so the court was justified in believing that plaintiff relied upon defendant's representations.

In her amended answer defendant set up as a special defense that after the discovery of the alleged fraud plaintiff affirmed the contract by requesting of said defendant that she remit $2,500 of the purchase price due under said contract, and by requesting of said defendant and accepting from her extensions of time for the making of said payments of $2,500, and by selling the pear crop on July 22, 1920, and by selling part of the personal property conveyed to him by said contract and sale, and by offering the land in question for sale.

The evidence on this branch of the case was that soon after he entered into possession of the land· plaintiff had trouble with the well and pump, and he discovered that he had not as many chickens as was represented. In the latter part of April, or the early part of May, 1920, plaintiff testified that he was informed by a Portuguese that the land was not sediment soil. Plaintiff sold a cow and some pigs, and in June listed the property for sale. About May 30, 1920, an installment of $2,500 became due, which was never paid. On July 3, 1920, Dr. Freeman visited plaintiff, who complained that various things were not as represented, but plaintiff told Dr. Freeman that he would try to borrow some money in order to meet the installment. Three days later plaintiff wrote to the defendant. In the concluding paragraph of this letter plaintiff said: "I think you people have taken advantage of me when my mind was not sound and I figer that I paid you all the place was worth and about $5000 more as nothing is as you said. I am getting despert a I have to hal water for everything on the place. A man from Hunts packing co told me that you were almost crazy last year because you could not get water. If you are honest and mean to do right with me you should give me a chance and make good all this representation. There will have to be a pit dug or a new pump which is going to be a great expence and I think you had better let that 2500 off as I· have tried to sell the place for $15000 and eight different people looked at and would not even consider. And if the place is worth that much to you I will give you the chance to make $3000. Please give this your attention as I want to hear from you at once." On July 18, 1920, plain-

tiff learned for the first time that the defendant received only $1,000 for the 1919 pear crop. He was told this by the purchaser of the 1919 crop. On July 22, 1920, plaintiff sold the pear crop for $1,075, and seven days later the formal notice of rescission was sent to the defendant.

Section 1691 of the Civil Code requires the party entitled to rescind "to rescind promptly, upon discovering the facts which entitle him to rescind." **[7]** Whether or not the defrauded party has rescinded "promptly" will depend upon all the circumstances of the particular case, and is, of course, a question primarily for the trial court. As has been pointed out, there was evidence that plaintiff did not learn of the true character of the soil until the latter part of April, or the first of May, and that in July he learned for the first time that the 1919 crop was sold for $1,000. It is true that plaintiff found out earlier that other things were not as defendant had represented, such as the number of chickens, and that the well was not sufficient to supply the farm. But we may reasonably presume that plaintiff decided that he would put up with these things; and had the farm been of "the finest sediment soil" it might have been worth $18,000, so plaintiff would no doubt hesitate to repudiate his contract for slight cause. There was evidence that all wells in the region of San Jose were low during the summer of 1920; and plaintiff no doubt took this into consideration when he discovered the shortage of water. Further, there were no findings with reference to the well or the chickens, so we may presume that the court did not think that they amounted to misrepresentations. We cannot say as a matter of law that when plaintiff discovered the shortage of chickens he was put on constructive notice as to the other frauds. **[8]** The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is, of course, a question for the trial court to determine. **[9]** Therefore, it would seem that the court was justified in holding that plaintiff offered to rescind within a reasonable time after he discovered the facts which entitled him to rescind.

**[10]** The findings of the court with reference to the alleged waiver were "that plaintiff did not, after the discovery of the said fraud and falsity of the representations which

the court finds were made by defendant waive said fraud
or affirm the said contract or sale as alleged in defendant's
amendment to her answer filed herein or by any other act
or conduct on the part of plaintiff." We consider this a
sufficient finding that the plaintiff did not waive the fraud.
[11] The question of waiver or nonwaiver was one of fact
for the trial court to pass upon, and the acts or conduct
which defendant claims constituted said waiver were the
evidence to be considered in determining the ultimate fact
of waiver or nonwaiver. We have already referred to these
acts of the plaintiff after discovering the alleged fraud, in
discussing the question of laches, which is practically the
same as the alleged waiver. We cannot say, as a matter of
law, that plaintiff intended to and did waive the fraud
herein complained of. [12] Whether or not a person has
ratified a voidable contract, or elected to affirm it rather
than to rescind it, depends primarily upon his intention, and
this is shown by his declarations, his acts, or his conduct,
which are matters of fact. The question is, therefore, a
question of fact for the determination of the jury. (*Del
Vecchio* v. *Savelli*, 10 Cal. App. 79, 82 [101 Pac. 32]; *Wilder*
v. *Beede*, 119 Cal. 646, 651 [51 Pac. 1083]; 27 C. J. 22, 77.)

It is not necessary to discuss all the various alleged errors
of law committed by the trial court. [13] The evidence
that the defendant received $1,000 for the pears "on the
trees" in 1919 was properly admissible, being within the
issue raised by the denial of the allegations of the complaint
that the defendant stated to plaintiff that said property had,
in the year 1919, produced pears of the reasonable value
of $1,600, and which were sold for that sum; that such
statements were false, and that said crop sold for a sum not
exceeding $1,000.

[14] Nor was it necessary that the court should make a
finding as to each ground of fraud alleged in the complaint,
since if the findings in plaintiff's favor as made support the
judgment (and we are of the opinion that they do), a find-
ing against him upon the remaining charges of fraud would
not affect his right to the relief given.

[15] Although there was no specific finding as to the
fact that plaintiff received the sum of $1,075 for the 1920
pear crop, plaintiff had so testified, and we must presume
that the court took this into consideration when it found

"that there is due from plaintiff to defendant the sum of $300, being the difference between the value of the said personal property sold by plaintiff, together with the value of the use by plaintiff of all the property conveyed to plaintiff by defendant, and the interest due to plaintiff on the purchase price paid by him to defendant." In any event, since the plaintiff, in the calculation by which the amount of the offset due to the defendant was found, was charged with the value of the use and occupation of the premises for the time he was in possession, he could not also be charged with the proceeds of said crop of pears.

The judgment is affirmed.

Waste, J., Myers, J., Lennon, J., Lawlor, J., and Wilbur, C. J., concurred.

Rehearing denied.