[Sac. No. 4115. Department One.—February 23, 1929.]

ANNIE McMAHON et al., Respondents, v. LUCINDA R. GRIMES et al., Appellants.

Orrick, Palmer & Dahlquist, R. W. Palmer, Eells & Orrick and Richard Belcher for Appellants.

Desmond Winship and W. P. Rich for Respondents.

CURTIS, J.—The defendant, The San Francisco Bank, was at the times mentioned herein the owner of a tract of land situated near Marysville in the county of Yuba. The tract had been subdivided into lots under the name of the Hallwood tract, and a plat made thereof and recorded in the office of the county recorder of said county. The defendant, Lucinda R. Grimes, with her husband, resides upon a portion of said tract, and the latter was caring for said land for the owner thereof. Both the defendant Grimes and her husband were farmers and were perfectly familiar with said tract and had lived in its vicinity for some ten years prior to the year 1921. In June of that year Mrs. Grimes made a trip to Massachusetts and there visited her relatives residing in that state. Among the latter were the plaintiffs in this action. The plaintiffs are husband and wife. William G. McMahon is a brother of Mrs. Grimes. Other relatives visited by her on the occasion of this trip were Harold C. Millar and his wife, Hazel G. Millar, the latter being a daughter of the plaintiffs herein. Mrs. Grimes prior to making her trip to Massachusetts had been told by the defendant, The San Francisco Bank, that it would pay her a commission of five per cent upon sales of land in said tract that she might make. On her trip Mrs. Grimes took with her a blue-print of the plat of said tract of land. This she showed to her relatives including the plaintiffs herein and to the said Hazel G. Millar and her husband Harold C. Millar. She informed them that the bank had taken over this large tract of land and that it intended to divide the same into lots; that she intended to buy a lot and wanted Mr. and Mrs. McMahon and Mrs. Millar each to purchase one. She picked out the three most desirable lots in the tract and informed her relatives that if they did not buy right away that they would be gone. She represented that said tract of land, and particularly that portion thereof

including the lots afterward sold to the plaintiffs and to Mr. and Mrs. Millar, respectively, was deep alluvial soil, well drained, free from hard-pan and clay and particularly adapted to the raising of peach trees, prune trees, and grape-vines, and that if plaintiffs would purchase the lots therein, which they afterward did purchase, and plant them to any of the above kinds of trees or vines, that within a period of three years after planting said fruit-trees and vines they would be producing fruit in paying quantities. Relying upon these representations made by Mrs. Grimes the plaintiffs, after Mrs. Grimes returned to California, opened negotiations direct with the defendant bank for the purchase of land in said tract with the result that on the twenty-sixth day of October, 1924, they purchased from the defendant bank a portion of two lots in said tract, containing something over twenty-seven acres, for which they agreed to pay the sum of $3,388.75. Of this purchase price on the date of purchase they paid the sum of $625 and executed their promissory note for the balance, secured by a deed of trust as a first lien against the land purchased. Neither of the plaintiffs had ever seen said land before they purchased the same from said bank nor had either of them been in the state of California prior to making said purchase. The plaintiff William G. McMahon was an accountant and neither he nor his wife knew anything about farming or the growing of fruit-trees either in the state of California or elsewhere. Among other representations made by Mrs. Grimes to her relatives on the occasion of her visit to them was that if any of them should purchase any of said tract her husband would care for the same and if desired by the purchasers, set the same to trees. Relying upon this representation plaintiffs sent to Grimes and his wife money for the development of the said land and part of the same was planted to peaches. In May, 1925, plaintiff Annie McMahon and her son came to California and visited Mr. and Mrs. Grimes at their home situated upon an adjacent lot from those purchased by plaintiffs. They remained there some weeks and after visiting another son of Mrs. McMahon at Covelo, California, returned to the Grimes home for a week in September of that year and then departed for Massachusetts. During the time they had occasion to observe the peach trees

which had been planted on the plaintiffs' land and also observe melons and vegetables growing on the Grimes property, but there was no evidence that they learned anything about the character of the land purchased by plaintiffs, and it appears that they returned home ignorant of its true quality. In 1926 Mrs. McMahon sent her son Harold to California for the purpose and in order that he might learn how to farm. He knew nothing about farming before coming to California. He arrived in April, 1926, and went immediately to the Grimes' home. He worked on the property purchased by his parents from April to October of that year, cultivating the peach trees, leveling the land and making additions to the home which was situated thereon. During this time his mother sent him $500 to apply on the promissory note given in part payment of the purchase price of the land. This payment was made by him in accordance with his mother's directions. In October, 1926, Mrs. McMahon and her daughter Mrs. Millar, who with her husband had also bought land in said tract from the defendant bank, broke up their homes in Boston, sold their furniture at a loss and came to California. They joined Harold McMahon on the McMahon property and made their home in the house located thereon. Soon after their arrival they were informed by their neighbors that the land purchased by them was not as represented to them by Mrs. Grimes and that they were wasting their time in endeavoring to raise fruit upon such land. This was in the latter part of October, 1926. They immediately communicated with the farm adviser and the horticultural commission of Yuba County and others acquainted with the character of said land and were informed by them that the land was worthless for fruit raising, due to lack of drainage and unfit condition of the soil. Mrs. McMahon and her son Harold went to San Francisco and attempted to see the president of the bank, but they were unable to obtain a hearing with him. On November 1, 1926, Mrs. McMahon wrote to the defendant bank regarding the misrepresentations that had been made to her and her daughter Mrs. Millar regarding the character of the land purchased by them from the bank and asked for the return of the money she and her daughter had paid on the land. She received no reply to her letter.

On November 22, 1926, she wrote again to the bank regarding the matter and asked for an adjustment of the claims of herself and daughter. After waiting for some time for a reply to this letter, and receiving none, Mrs. McMahon and her daughter consulted an attorney and laid the facts of their cases before him. They were advised by him that they could rescind their contracts on account of the misrepresentations made by Mrs. Grimes as to the character of the land, and they thereupon and on or about the twenty-first day of February, 1927, served a written tender to the bank of the property purchased by them and demanded the return of the money which each had paid on the purchase of their respective pieces of land, and a cancellation of the notes and trust deeds given as security for the balance due on the purchase price of each respective purchase. This demand was refused and the plaintiffs on March 2, 1927, instituted this action to recover the amounts claimed to be due them from said defendants on account of said misrepresentations and to cancel the promissory note and trust deed given at the time of said purchase.

Upon the trial of the action the court found that the representations were made by Mrs. Grimes as alleged by plaintiffs; that they were false and fraudulent and defendant Grimes knew of their falsity at the time they were made and that she made the same for the purpose of inducing plaintiffs to purchase said land; that plaintiffs believed that said representations were true and relied upon them in the purchase of said land and would not have made said purchase nor have entered into said contract of purchase had they not believed in the truth of said representations. The court also found that the plaintiffs promptly rescinded said contract of purchase upon learning of the untruth and falsity of said representations and demanded the repayment to them of the money paid by them on said contract and the cancellation of their promissory note and trust deed.

From a judgment against them the defendants have appealed. They base their right to a reversal of the judgment upon two grounds. First: That the alleged misrepresentations claimed to have been made by defendant Grimes were mere statements of opinion honestly given and were

not such representations as would entitle plaintiffs to a rescission of the contract; second: Plaintiffs did not promptly rescind their contract upon discovering the facts which they claimed entitled them to a rescission.

Defendants do not seriously contend that the findings of the trial court that Mrs. Grimes made said representations as alleged and that they were false, do not find substantial support in the evidence. They do claim, however, that the evidence of the plaintiffs shows that the only representations made by Mrs. Grimes, which were deemed of importance by the plaintiffs were those in which Mrs. Grimes represented to the plaintiffs that the land was good peach land and that if purchased by plaintiffs they could make a profit by raising peaches and grapes thereon. While there is evidence in the record that the plaintiffs were interested in purchasing the land largely by reason of Mrs. Grimes' statements to them that peaches and grapes could be grown profitably thereon, there is nothing to indicate in the least degree that they did not attach importance also to the statements of Mrs. Grimes that the land was of a deep alluvial soil, well drained and free from hard-pan and clay. The court found and in our opinion the evidence shows beyond any serious doubt that these representations regarding the character of the soil with those regarding the availability of the land to produce peaches profitably, together operated upon the minds of the plaintiffs and induced them to contract for the purchase of the land. It is true that plaintiffs were mainly interested in procuring land upon which peaches could be profitably grown, and had the defendant Grimes confined her statements simply to the merits of the land in this respect the claim which the defendants now make might find some reasonable basis of support. But her representations went further and included those regarding the character of the soil of the land she proposed to sell to plaintiffs. In passing we might say that the evidence shows that had the representations regarding the soil of said land been true then the land would have been of such a character that peaches could have been profitably grown thereon. The defendants state in their brief, and no doubt this statement finds ample support in the evidence, that the Hallwood tract is located in the midst of one of the best

peach-growing sections of this state, and that the land comprising this tract has a well-established and adequate water supply. It would appear from this statement that the only element which was lacking in the land in order that it might produce peaches profitably was a soil adapted to that purpose. As to the nature of the soil the court found that the land was "thin, shallow land, commonly known as red land, and instead of said land being well drained it was and is lower than surrounding land and during the rainy season the water from the surrounding land drains upon lots numbers 1 and 2 (the land purchased by plaintiffs being a portion of said lots) so that a large portion of it is covered with water, and that instead of said land being free from hard-pan and clay, it is what is commonly called hard-pan land and pot-hole land, and hard-pan and clay is found thereon a few inches below the surface of the ground." We think the representations of the defendant Grimes as to the character and nature of the soil were not only material representations, but that plaintiffs so considered them and that they, with the further representations of Mrs. Grimes that land of this character would produce peaches profitably, were relied upon by plaintiffs and that plaintiffs by reason of these representations were induced to enter into the contract which they now ask to have annulled. That representations regarding the character and nature of the soil of land sold are statements of a fact and when fraudulently made will justify a rescission of the sale is supported by an unbroken line of authorities in this state. Particularly is this so when the trial court, as it has in the present action, found that such representations were statements of fact and not the expression of an opinion (*Groppengiesser* v. *Lake*, 103 Cal. 37 [36 Pac. 1036]; *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]; *Delta Land etc. Co.* v. *Perry*, 57 Cal. App. 314 [207 Pac. 393]; *Stone* v. *McCarty*, 64 Cal. App. 158 [220 Pac. 690]; *Dickey* v. *Dunn*, 80 Cal. App. 724 [252 Pac. 770]; *Powell* v. *Oak Ridge Orchards Co.*, 84 Cal. App. 714 [258 Pac. 636]). In this last-named case the representations which were claimed to be false were that the land was productive and free from hard-pan. The trial court found that said statements were false and gave judgment in favor of plaintiffs rescind-

534

ing the sale by reason of the falsity of said representations. The district court of appeal affirmed the judgment, and referring to these representations said: "The statements as to the character of the soil and as to the water supply were clearly misrepresentations of fact." ▮ It is contended by the defendants that the statements regarding the character of the soil and the adaptability of the land for the growing of peaches by Mrs. Grimes were honestly made and in proof of this contention defendants cite the fact that, as shown by the evidence, Mrs. Grimes and her husband, about the time the plaintiffs made their purchase, also bought land of the defendant bank in the same tract, and that the land bought by Mr. and Mrs. Grimes was similar in quality and character to that purchased by plaintiffs and the price paid therefor per acre was the same as plaintiffs paid for their land. This circumstance will not avail the defendants in their effort to defeat plaintiff's claim. The court expressly found that Mrs. Grimes stated to the plaintiffs that the land was of "a deep alluvial soil well drained and free from hardpan and clay," and that this statement was not true. Construing the evidence in the light most favorable to the defendants these findings bring the statements of Mrs. Grimes clearly within the provisions of section 1572 of the Civil Code defining actual fraud which is defined to include "The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though be believes it to be true." (*Muller* v. *Palmer,* 144 Cal. 305 [77 Pac. 954].) Conceding that Mrs. Grimes honestly thought her statements as to the character of the land were true, she was not justified in making them to the plaintiffs in order to induce the latter to purchase the land through her, for the reason that she did not have, and could not have had, any competent information that they were true. Had she made an examination of the land for the purpose of asserting the depth of its alluvial soil, and the presence or absence of hard-pan and clay thereon, she would have discovered its true character, and as such an examination would have revealed the presence of hard-pan and clay, and but a thin layer of alluvial soil, she could not have thereafter truthfully made said statements relative to the character of said soil. If she made such state-

ments without this information or some other of equal merit, then she was guilty of fraud even if she believed they were true. As was said in *Muller* v. *Palmer, supra,* quoting from the early case of *Alvarez* v. *Brannan,* 7 Cal. 504 [68 Am. Dec. 274], "But it is equally true that, whether a party thus misrepresenting a material fact knew it to be false or made the assertion without knowing whether it were true or false is wholly immaterial. If a party asserts that as true which he does not know to be true, it is a false representation. If he intends simply to state his belief upon information then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement in the form in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his peril, and must make good his assertion." In our opinion there can be no escape from the conclusion that the representations made by Mrs. Grimes regarding the nature and character of the soil of the land sold and of its adaptability to the profitable growing of peaches thereon were statements of material fact, that these statements were false and fraudulently made and that by reason thereof the plaintiffs were entitled to rescind the sale which they were induced to enter into by said false and fraudulent representations.

Defendants further contend even if the plaintiffs originally were entitled to rescind their contract by reason of the false and fraudulent representations made to them by Mrs. Grimes, that they did not act promptly upon the discovery of the falsity of said representations. Therefore, they were guilty of laches, and their right to rescind was barred at the time the notice of rescission was served. We have already set out substantially all of the evidence bearing upon this phase of the action. It is claimed by the defendants in the first place that the plaintiff Annie McMahon, at the time of her visit to the land in the summer of 1925 with her son, Harold, and the latter during this visit, and the subsequent visit made by him in the following year at which time he worked upon the land purchased by plaintiffs as their representative and agent, had ample opportunity to discover the true character

of the land. It is not claimed that either Mrs. McMahon or her son Harold during the occasions just mentioned discovered that the land was not as represented by Mrs. Grimes, or that either of them had notice during either of these two visits of any fact or circumstance which would put them as prudent and intelligent persons on inquiry as to the truth or falsity of the representations made by Mrs. Grimes. The broad claim is made, however, that as Mrs. McMahon and her son were upon the land during some two months in the year 1925, and the son for a longer period of time in 1926, it was their duty to make such investigations as would disclose the facts concerning the property purchased by plaintiffs. The law placed no such obligation upon the plaintiffs. This question was recently before this court and answered adversely to the contention of defendants (*French* v. *Freeman*, 191 Cal. 579, 586 [217 Pac. 515]). Quoting from this case, we find the law on this subject stated as follows:

"Plaintiff testified that he relied on these representations, and we do not believe that he was under any obligations to investigate and to verify their truth. In *Teague* v. *Hall*, 171 Cal. 668, at 670 [154 Pac. 851, 852], it is said: 'We think it must be held that the court erred in directing the jury, as it did in effect, that a party who has relied upon a misrepresentation made by another and has suffered injury thereby is precluded from recovering, if he had an opportunity, and did not avail himself thereof, to test the truth of the representations by independent investigation. Some of the earlier cases state the rule in this broad way, but, as Mr. Bigelow says in his work on Fraud, volume 1, page 523, "the proposition has now become very widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were specially open to him. . . . "' Similarly in Pomeroy's Equity Jurisprudence, section 896 [895], it is said that "whenever a positive representation of fact is made, the party receiving it is, in general, entitled to rely and act upon it, and is not bound to verify it by an independent investigation. Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making

it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The mere *existence of opportunities* for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred; the doctrine of constructive notice does not apply where there has been such a representation of fact." ' "

Defendants have cited a number of authorities which they claim support their contention as made above, but it is apparent that upon a close study of them they are inapplicable to the facts in the present action. One of the authorities thus cited is the case of *Greene* v. *Locke-Paddon Co.*, 36 Cal. App. 372 [172 Pac. 168], where the court says: "The land was at all times open and accessible to inspection, *and although often warned,* as shown by his own testimony, concerning the nature of the soil, he took no steps to assert his rights, but on the contrary, farmed and rented and tried to sell the land, and during a period of about two years continued to make the periodical payments provided for in his contract of purchase." The words in this excerpt italicized, which we have supplied, show that the plaintiff in that action had received definite warning that the land was not as represented, and the court held that after such warning it was his duty to make investigation as to the character of the land, and failing to do so, the court held "that the plaintiff had lost his right to rescind the contract by his delay in pursuing with reasonable diligence a proper inquiry into the character of the land bought by him, after having been, as we conceive he was, put upon inquiry, and by his delay in asserting his right after obtaining the knowledge which his tardy investigation led to." This case is typical of defendants' authorities upon this question. They do not apply to the facts in this case for the reason that there is no evidence that either of the plaintiffs, by themselves or through their son Harold, or by or through any other means, received any warning or intimation whatever prior to the time Mrs. McMahon in October, 1926, moved on to the land that the land was not as represented to them.

They were not, therefore, required to make during these times any investigation of the land for the purpose of determining whether the representations made regarding it were true. They had the right to rely upon the representations made to them as to the character of the land, and "Where a purchaser is justified in relying, and in fact does rely, upon false representations his right of action is not destroyed because means of knowledge were open to him" (*Dickey* v. *Dunn,* 80 Cal. App. 724 [252 Pac. 770]; *Powell* v. *Oak Ridge Orchards Co.,* 84 Cal. App. 714 [258 Pac. 636]; *Teague* v. *Hall,* 171 Cal. 668 [154 Pac. 851]). It is true that in *Lee* v. *McClelland,* 120 Cal. 147 [52 Pac. 300], cited by defendants, the court held that "Means and opportunity of acquiring knowledge in such a case are equivalent of knowledge." This principle of law might be applicable to particular sets of facts, like those in that case, but it does not govern all cases where fraud is charged, as will appear from a reading of *Teague* v. *Hall, supra,* and *French* v. *Freeman, supra,* and others cited herein. ■ As we view the evidence, the plaintiffs received no warning or intimation from any source whatever that the land was not as represented until the plaintiff Annie McMahon visited the land in October, 1926, for the purpose of making her home thereon. The neighbors then informed her that the land was not adapted to the growing of fruit-trees, and the evidence shows that promptly on receiving such warning she instituted an investigation of the land which revealed to her its true character. Defendants contend, however, that even after receiving this warning Mrs. McMahon did not act promptly to rescind her contract. With this contention we cannot agree. Upon being warned by her neighbors, as mentioned above, she immediately made investigations through the farm adviser, the horticultural commission and others in the vicinity where the land was located, as to the condition of the land, its soil and its adaptability to fruit culture. On November 1st she wrote the bank, briefly stating the result of her investigation and virtually agreeing to reconvey the land upon receipt of the money paid on the land. She received no answer to this letter nor to a second letter written on the twenty-second day of that month. She consulted an attorney who advised her that she could

legally rescind the sale. On February 21st following, plaintiffs served a formal demand for a rescission prepared by their attorney upon the defendant bank, which demand was rejected and the present action was instituted less than two weeks thereafter. Defendants assert that the plaintiffs delayed from the month of October to the following February before giving notice of rescission, after they learned that the land was not as represented to them. This assertion is not in entire accord with the facts, which show that plaintiffs on November 1st wrote the bank asking for a return of their money. While this notice was in the form of a letter and was prepared by the plaintiff Annie McMahon, probably without legal assistance, yet we think that the reasonable import of its terms was that Mrs. McMahon wanted to rescind the sale. It is true that she later served a more formal demand for the return of her money and offer to reconvey the land. Defendants insist that this formal notice was the only legal notice of rescission given by the plaintiffs. Conceding that to be so, yet the greater part of the time intervening between the time when plaintiffs first learned that the land had been falsely represented to them and the giving of this notice was spent by the plaintiffs in an effort to have the defendant bank adjust their differences. These facts bring the present action within a well-established rule, announced by Black on Rescission and Cancellation, section 544, volume 2, as follows: "And where a party protests promptly on discovering that he has been defrauded in making a contract, and then enters into negotiations for a peaceful settlement, which fail, a bill for cancellation of the contract, filed within a reasonable time after such failure, is not barred by laches." This rule was followed by the court in the case of *Powell* v. *Oak Ridge Orchards Co.*, 84 Cal. App. 714 [258 Pac. 636], where a state of facts, quite similar to those in the present action, were considered by the court, and the above rule was applied thereto. We think this rule is sustained both by reason and authority and we have no hesitancy in giving it our unqualified approval.

In addition to the foregoing reasons why the plaintiffs were not guilty of laches, which would defeat their action, they have called to our attention the further

principle of law that the question of laches is, in the first instance, largely one for the determination of the trial court, and that its conclusion will not be set aside by an appellate court if it finds reasonable support in the evidence. A number of authorities are cited in plaintiff's brief in support of this statement of the law. Among them is the case of *Suhr* v. *Lauterbach,* 164 Cal. 591, where the court on page 594 [130 Pac. 2, 4], has passed upon the question in the following language: ''The plaintiff is not to be held barred from his remedy for the wrong alleged to have been done him, on the ground that he has been guilty of laches, unless his delay in bringing action has been of such length and under such circumstances that it would be inequitable to enter into an inquiry as to the validity of his claim or to allow such remedy. Whether such is the situation is a question in the first instance for the trial court, and if its conclusion thereon can reasonably be held to find sufficient support in the evidence, an appellate court should not interfere therewith.''

We find similar enunciations of this principle in the following cases from the appellate courts of this state: *Chapman* v. *Bank of California,* 97 Cal. 155, 158 [31 Pac. 896]; *Wilder* v. *Beede,* 119 Cal. 646, 651 [51 Pac. 1083]; *Stevenson* v. *Boyd,* 153 Cal. 630 [19 L. R. A. (N. S.) 525, 96 Pac. 284]; *Davis* v. *Butler,* 154 Cal. 623 [98 Pac. 1047]; *French* v. *Freeman,* 191 Cal. 579 [217 Pac. 515]; *Del Vecchio* v. *Savelli,* 10 Cal. App. 79, 82 [101 Pac. 32]; *Dickey* v. *Dunn,* 80 Cal. App. 724, 729 [252 Pac. 770]; *Powell* v. *Oak Ridge Orchards Co., supra.*

From what we have already said, it is evident that the finding of the trial court that plaintiffs were not guilty of laches finds ample support in the evidence. Following the rule established and approved by the foregoing authorities, we would not be justified in disturbing the finding of the trial court to the effect that the plaintiffs promptly rescinded the transaction upon learning of the untruth and falsity of said representations. In our opinion the judgment of the trial court should be affirmed, and it is so ordered.

Preston, J., and Seawell, J., concurred.