[Civ. No. 8755. First Appellate District, Division One.—April 29, 1933.]

MABEL T. DUNN et al., Respondents, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, etc., et al., Defendants; GEORGE C. FLINT et al., Appellants.

O'Melveny, Tuller & Myers, Albert Parker and A. Maxson Smith for Appellants.

Cameron & Perkins for Respondents.

THE COURT.—The action herein is one to rescind two contracts for the purchase of two lots from the defendant Security-First National Bank of Los Angeles, as trustee, and to recover from the defendants Flint, Jackstadt and others, as beneficiaries under the trust, the amounts paid by plaintiffs on said contracts, upon the ground that the defendants last named and their agents induced plaintiffs to purchase said lots by means of false and fraudulent representations. The trial court found in favor of plaintiffs on all issues, except the amount claimed to be due; and judgment was entered accordingly for the repayment to plaintiffs of the sum of $1966.30, interest and costs. From such judgments the defendants Flint and Jackstadt prosecute this appeal.

The lots were part of a subdivision situate near Point Fermin, Los Angeles County, and sales were being promoted through selling agents and lectures delivered in a tent near the subdivision. The respondents, Mrs. Dunn and Miss Marshall, formerly resided in Mississippi. They were in moderate financial circumstances and inexperienced in business. They arrived in Long Beach on June 10, 1927, and took accommodations at an apartment house. Within a few days after their arrival they met some of the selling agents of appellants' subdivision, who were staying at the same apartment house, and said agents sought immediately to interest respondents in the purchase of some of the lots. After several interviews and during the latter part of the same month Mrs. Dunn was given employment by said agents to solicit prospective buyers to visit the subdivision and hear the addresses which were being delivered in the tent as to the future prospects of the property; and soon thereafter respondents were induced to enter into contracts for the purchase of two lots, one contract being executed on July 1, 1927, and the other on July 12, 1927. Among the representations made to them, and which the court found were false and fraudulent, were that the entire block immediately across the street from the lots which respondents were induced to purchase had already been sold, and the full purchase price paid therefor; that a hotel building was going to be built thereon in the near future; that the plans had been drawn, the financing had been completed and the

contract let and that within a short time the ground would be broken to start construction; furthermore, that certain portions of the hotel building had already been leased, and that whole floors had been leased to naval officers. In this regard the evidence shows that as part and in further-ance of said representations respondents were shown colored drawings of the proposed hotel, which was to be six stories high; and they were told two floors thereof had already been leased to naval officers, some of high rank being mentioned; that the city of Los Angeles "had purchased the frontage of all along up to where the hotel was to be" and was negotiating to purchase more of the property; and they were assured that the value of the lots would enhance so rapidly that respondents would be able to dispose of them at any time for a greatly increased price. Mrs. Dunn con-tinued to work for appellants off and on until the spring of 1928, and Miss Marshall was also so employed during part of that time. At that time the construction of the hotel had not started, and being hard pressed for money, Mrs. Dunn having been compelled to pledge her diamond ring to keep up payments, respondents complained to the sellers about the matter, and were told "not to get worried and upset about it", that the hotel would be built, that although it had been delayed it would be built and that respondents would "get out of this all right". Respondents waited until November, 1929, and there being no indication at that time of an intention to construct the hotel, respondents sought legal advice, as a result of which they caused to be served notice of rescission of the contracts. About two months prior to the service of such notice, however, the sellers declared a forfeiture of the contracts for failure to make the installment payments thereon.

As one ground of reversal appellants urge that since respondents, in pursuance of their employment with appellants, represented to other purchasers the same facts which they use as a basis for their action in rescinding their contracts, they are estopped from denying the truth of said representations. The two cases of *McMahon* v. *Grimes*, 206 Cal. 526 [275 Pac. 440], and *Stirnus* v. *Adams*, 50 Cal. App. 730 [195 Pac. 955], cited by appellants in support of such contention, are not in point. There the selling agents were made parties defendant to the actions for rescission and

the point decided was that contrary to their contention the agents could not escape liability for the misrepresentations they had made simply because they believed at the time of making the same that the representations were true.

Appellants contended also that respondents were barred by laches from rescinding. There would be more force in the contention if the representations made related to facts which respondents could have readily and definitely ascertained were false; but such is not the case. On account of the nature of the representations respondents were compelled necessarily to wait a considerable period of time before they could safely assert that the same were false; and as already shown during that period of time respondents made inquiry as to the intentions of the sellers, and were reassured and told "not to get worried", that as represented the hotel would be built and that everything would be all right. In view of such reassurance we are not prepared to hold, contrary to the implied finding of the trial court, that the lapse of time before rescinding was unreasonable. Appellants call attention to the fact that one of the selling agents died shortly before respondents rescinded and that consequently appellants were deprived of his testimony at the trial. It does not appear, however, that the deceased agent was in possession of any facts not within the knowledge of the other sellings agents who did testify; and consequently it has not been shown that the absence of such testimony operated to appellants' prejudice.

Nor do we find any fatal defect in respondents' notice of rescission. They offered therein to reconvey any interest they may have acquired in said lots, and demanded the return to them of the moneys theretofore paid by them on said contracts, together with interest thereon at seven per cent per annum from the dates of said payments; and regardless of the fact that in a few instances the specific amounts of said payments set forth therein were incorrect, appellants concede that judgment was rendered for the correct amount.

The remaining point, as to whether the trial court erred in refusing appellants' request for permission to amend their answer so as to plead laches as a defense, is unimportant for the reason that the ground of such refusal

was that laches could be shown without pleading it as a defense; and following such theory the trial court permitted both sides to introduce evidence on that issue.

After considering all points urged, it is our conclusion that no such error has been shown as demands a reversal; and accordingly the judgment is affirmed.

Associate Justice Cashin, deeming himself disqualified, does not participate in this decision.