[Civ. No. 349. Fourth Appellate District.—March 14, 1931.]

HARRY I. SHERRATT, Respondent, v. HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation) et al., Appellants.

L. E. Dadmun, F. E. Davis and Rohe & Freston for Appellants.

Youngworth, McClean & Hartman for Respondent.

BARNARD, P. J.—This ·is an action for rescission of a contract to purchase real estate, and to recover the portion of the purchase price paid. The action is based upon the claim that the plaintiff was fraudulently shown a particular lot in a subdivision by certain of the defendants acting as agents for certain other defendants, and that after agreeing to purchase the property upon which they then stood, the plaintiff was given a contract for a different lot, being one that he had particularly refused to buy. This contract was dated November 10, 1924. There were no buildings on the lot, and the complaint alleges that the plaintiff first discovered he had been given a contract for a different lot on or about the eighth day of October, 1925; that he im-

mediately notified the agents who had sold him the property, and demanded that the agreement be corrected to describe the lot he had agreed to buy; and that from that day until the twenty-eighth day of October, 1926, the plaintiff and the defendant agents held numerous conferences in attempting to settle and adjust the matter, but upon the conclusion of these negotiations, the defendant agents refused to correct the agreement or to return the amount paid. Thereupon, the plaintiff served a written notice of rescission and offered to restore everything of value which he had received. This action was filed on January 14, 1927, and from a judgment in favor of the plaintiff, the defendants have appealed.

Appellants first attack the sufficiency of the complaint. A number of suggestions are made, which are obviously without merit, and only two grounds of attack are sufficiently set forth to call for attention. ■ It is first insisted that the complaint does not allege fraud definitely, but only upon information and belief. This is apparently addressed to paragraph VI of the complaint, in which an allegation, upon information and belief, is intended to apply to the knowledge of the defendants. Aside from any other consideration, paragraph V of the complaint definitely and positively alleges fraud in particulars which are clearly set forth. ■ Another alleged reason why the complaint is not sufficient is, that the contract contains a clause to the effect that the property had been inspected by the buyer, and was being purchased as a result of that inspection, and not because of any representation made by the seller or any selling agent of the seller. Not only does this clause of the contract not appear in the complaint, but in any event, the clause is not controlling when the entire contract has been induced by fraud. As was said in *Palladine* v. *Imperial Valley Farm Lands Assn.*, 65 Cal. App. 727 [225 Pac. 291, 299] : ''The fraud which was the inducing cause of the execution of the contract renders the whole instrument vulnerable—the clause in question as well as all the other provisions.''

■ A number of other points are raised which all go to the effect that the plaintiff personally inspected the property and did not rely upon any representations made, and a particular finding to the effect that the plaintiff was not able to determine the correct number of the lot from

an inspection of the property is attacked, as not supported by the evidence. It is insisted that the evidence conclusively shows that four stakes on each lot were so numbered as to plainly and clearly show the number of the lot. While there is much evidence in the record to show that such numbered stakes were on the lots at some time, and while there is some evidence that they were on the lots at the time they were inspected by the respondent, there is other evidence to the contrary, and the most that can be said in regard to these points is that they relate to a conflict in the evidence, which has been resolved by the trial court in favor of the respondent.

 The main ground relied upon as necessitating a reversal is that the respondent was guilty of laches, and that his right to recover is therefore barred. The court found that on the same day he discovered he had been sold the wrong lot, the respondent went to the selling agents and demanded that his agreement be corrected to cover the land he had actually bought, or that the money he had paid be refunded to him, and this finding is not attacked. The court also found that from October 8, 1925, to and including October 28, 1926, conferences and negotiations were pending and held between the parties in attempting to settle and adjust this matter, and that when the selling agents refused to correct the agreement or repay the amount paid, the respondent then promptly gave notice of rescission and offered to return all he had received. The notice of rescission appears in the record. While these negotiations were pending, and early in January, 1926, the respondent went to see the head of the John A. Evans Corporation and told him he either wanted the lot be bought or his money back. He was told that the other lot was sold and that his money would not be returned. He was further told that he would be foolish to take the matter to court, because he would lose anyway, since they had four or five lawyers to take care of things of that sort. However, John A. Evans told him to go to the office of the John A. Evans Corporation. When he went there, he was told that if he would give them a ''60-day exclusive'' on the property, he would get his money. He did this, but did not receive his money. The various findings of the court upon this subject are not attacked by appellants, but their argument is confined to

the proposition that laches is shown as a matter of law. It is the general rule that a person desiring to rescind must do so promptly. (Civ. Code, sec. 1691.) If a person retains the benefits of a contract and continues to treat it as binding, he will be deemed to have waived any fraud and to have elected to affirm the contract. (*Cross* v. *Mayo,* 167 Cal. 594 [140 Pac. 283].) In this case, the respondent did not retain any benefits of the contract and did not treat the same as binding, but merely gave to the defendants, in reliance upon their own suggestions, time and opportunity in which to adjust the matter. This is especially suggestive in view of the youth and inexperience of the respondent. ■
Whether or not a party to a contract has rescinded promptly upon the discovery of fraud, is ordinarily a question to be decided by the trial court, and if its conclusion is reasonably supported by the evidence, an appellate court will not interfere therewith. (*Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2]; *Davis* v. *Butler,* 154 Cal. 623 [98 Pac. 1047].) In the case of *Powell* v. *Oak Ridge Orchards Co.,* 84 Cal. App. 714 [258 Pac. 636, 638], the court said:

"The claim of laches in rescinding the contract is also without merit. In September, 1922, which was the month following the discovery of the soil conditions, Powell went to Orange county, the residence of the defendant corporation, seeking a rescission of the contract. There, in conversation with the officers of said corporation, he offered to return everything he had received by virtue of the contract and demanded repayment to him of the money he had expended thereunder. His offer of rescission was not acted upon at that time, however, said officers informing him that his proposition would be brought before the directors of the company at its next meeting, and that as soon as a decision was reached he would be notified. After waiting vainly for a reply until February 15, 1923, he served formal notice of rescission, and, as already stated, on April 21, 1923, commenced this action. 'Where a party protests promptly on discovering that he has been defrauded in making a contract, and then enters into negotiations for a peaceable settlement, which fail, a bill for cancellation of the contract, filed within a reasonable time after such failure, is not barred by laches' (2 Black on Rescission and Cancellation, sec. 544).

"Moreover, 'there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine' of laches (*Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516]), the question of whether or not a party defrauded has rescinded promptly depending upon all the circumstances of the particular case and being primarily one for the trial court to determine (*French* v. *Freeman,* *supra* [191 Cal. 579, 217 Pac. 515]); and if its conclusions thereon find reasonable support in the evidence the reviewing court will not interfere therewith (*Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2])."

Under the circumstances here existing, we are unable to say that the respondent did not use reasonable diligence in giving notice of rescission, and in beginning this action. He gave verbal notice to appellants the day discovery was made. In view of the fact that the pending negotiations, which were based upon representations that by giving them time they would get his money for him, continued until October 28, 1926, and that when it appeared there was no use in waiting longer, a formal notice of rescission was given, we cannot say that the trial court was not justified in holding that there was no laches. The time between the formal notice of rescission and the filing of the action was not unreasonable, as has been held in many cases. Not only do the appellants appear to have been more responsible than respondent for any existing delay, but prejudice from such delay in no manner appears.

It is next urged that the respondent has shown no damage, and that it does not appear that the lot referred to in the contract was not as valuable as the lot he agreed to buy. Not only is a purchaser entitled to get what he agrees to buy, but the evidence shows a marked difference between the two lots, in that a great deal more excavation would be required upon one lot than on the other, in order to build thereon, and the lot he agreed to buy had a frontage upon two streets, which fact was mainly responsible for his entering into the agreement. We think a substantial damage was shown. (*Spreckels* v. *Gorrill,* 152 Cal. 383 [92 Pac. 1011]; *Taber* v. *Piedmont Heights Bldg. Co.,* 25 Cal. App. 222 [143 Pac. 319].)

The judgment appealed from is amply sustained by the evidence, and we find nothing in the record that would have

justified a different conclusion, except certain evidence which merely raises a conflict and which apparently was not accepted as true by the trial court.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.