[L. A. No. 12750. In Bank.—September 30, 1933.]

GEORGE N. WEDGE, etc., et al., Respondents, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, a National Banking Association, et al., Appellants.

114

H. S. Clewett and Joseph J. Rifkind for Appellants.

W. C. Shelton and George W. Burch, Jr., for Respondents.

SEAWELL, J.—By the judgment appealed from the court below decreed rescission of a contract for the sale of a lot in the city of Los Angeles entered into between defendant Security Trust & Savings Bank as seller and plaintiffs as purchasers, and awarded plaintiff a money judgment for $3,656.31. Said sum represents the amount paid on the purchase price, plus taxes and interest. The defendant Security-First National Bank of Los Angeles is the successor in interest of Security Trust & Savings Bank by virtue of a bank consolidation.

The lot in suit is triangular in shape. It has a frontage of approximately 150 feet on Farewell Avenue, the entire length of the block, and also a frontage of 114 feet on Waverly Drive. The northwesterly corner is an acute angle formed by the intersection of said public ways. The purchase price was $3,000. Plaintiffs, George N. Wedge and Herbert F. Wedge, who are brothers, paid $2,000 upon execution of the contract on or about March 12, 1924. The balance was provided to be paid in monthly installments of $33.50. In May, 1929, before plaintiffs had paid the purchase price in full or received a deed, they discovered that the city of Los Angeles had a right of way 120 feet in width across the lot for power line purposes, upon which no building could be erected, with the possible exception of an absolutely fireproof structure. Inasmuch as the major portion of the lot lay within the right of way, plaintiffs claimed said right of way rendered it valueless. Upon the bank's refusal to cancel the contract and restore the consideration which plaintiffs had paid, they brought this action for rescission based on fraud and failure of consideration. The court below entered judgment for plaintiffs, from which defendants prosecute this appeal.

Plaintiffs had observed the electric transmission wires, which passed over the property at a considerable height, when they first viewed the property. Said wires were carried by steel towers built on concrete blocks. One of these towers was situate on the southwest corner of Farewell Avenue and Waverly Drive, directly opposite the lot purchased

by plaintiffs. They were interested in erecting a bungalow court and feared the presence of said transmission lines. In answer to their inquiries as to whether they could build under the wires, Gould, the salesman with whom they were negotiating, replied, "Absolutely, yes." Mrs. Lena Wedge, wife of George N. Wedge, testified that Gould said in her presence and in the presence of plaintiffs: "Why, how could those wires possibly make any difference? If you object to wires, where in the world are you going to build a court in this city? . . . How in the world could these wires so high up as they are make any difference in your building either to the people who are living there?"

The judgment by which the right of way across said lot was condemned to the city in 1917 provided that "no combustible material or structure shall be erected on said right of way, nor shall any combustible material be stored permanently left thereon". Approximately three-fourths of the total area of plaintiffs' lot is within this right of way. Plaintiffs contend that by the terms of said judgment no structure whatsoever could be built upon the right of way, since the word "structure" is not preceded by the word "combustible", while defendants contend that only combustible structures are prohibited. The contract of sale specifically provides that no building except a single family residence, a double bungalow or duplex house, or bungalow court shall be erected on the property, and buildings of this class are seldom of fireproof construction. In view of our prevailing modes of construction, a provision against the erection of any residence buildings except fireproof structures is so severe a limitation on the right to build as in effect to prevent building.

The entire area which lies outside the right of way cannot be built upon due to its triangular shape. This section is 95.80 by 42.5 by 91.65 feet. The depth of the section decreases from 42 feet along the east line of the lot to zero. Approximately one-third of the frontage of 95 feet on Waverly Drive has a depth of 15 feet or less. A building could not extend into the long, narrow apex of the triangle. Further, even if the provisions of the contract do not require that a building actually fronting on Waverly Drive should be set back 15 feet from the line, in view of the manner in which residences are generally placed, a residence

building facing Waverly Drive could not well be built up to the line of the lot on Waverly. The erection of a bungalow court, required by the contract to consist of not less than four buildings, or of a duplex house, would certainly be an impossibility. To build a presentable single family residence, required by the contract to cost $4,000, would be a difficult architectural problem if indeed it is possible at all.

█ In defense of the action for rescission defendant banks rely on a provision in the contract of sale to the effect that the buyer waived all claims for damages because of any representations made by any person whomsoever other than as contained in the agreement. All *oral* representations as to the availability of the lot for building were made by the salesman Gould. However, the contract of sale specifically provided that upon lots 1 to 25, which included plaintiffs' lot, no building could be erected other than a single family residence to cost $4,000, a double bungalow or duplex to cost $5,000, or a bungalow court to consist of at least four residence buildings to cost at least $1500 each. The subject matter of the contract is a residence lot, located in a residence subdivision and restricted to use for residence purposes. The seller has said to the purchaser by the terms of the contract: "You cannot use this property for anything except residence purposes." If at the time of execution of a contract of sale the lot may not be used for the single purpose for which it has value and to which its use is restricted, there is a failure of consideration.

The contract herein appears to be the result of mistake, rather than actual fraudulent intent. Although there is no direct proof on the point, it is to be inferred that the bank in signing the contract was unaware of the existence of this right of way 120 feet in width. In fact there is no proof that Gould, the salesman, knew that the major portion of the lot was unavailable for general residence purposes. The purchase price fixed by the contract, $3,000, is evidence of the good faith of the bank. It is not to be presumed that the bank would fix such a price had it known of the existence of the right of way. █ Provisions which may relieve the seller from liability for representations of an agent not embodied in the contract under the doctrine of *Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322], do not relieve the seller from responsibility for his own fraud or mistake, or

fraud or mistake of managing officers where the seller is a corporation. (*Simmons* v. *Ratterree Land Co.*, 217 Cal. 201 [17 Pac. (2d) 727].) And in no event can the seller escape liability on the provisions of the contract. Here there has been a basic failure of consideration as to the express subject matter of the contract, which the seller intended to sell and the purchaser to buy—that is, a residence lot. Recovery is had on the written contract, rather than on oral representations in conflict with or entirely outside the provisions of the contract.

The fact that the existence of the right of way upon the judgment of condemnation may have been a matter of record does not bar plaintiffs. As between plaintiffs and third parties, plaintiffs would be charged with constructive notice of all matters of record, but this defense is not available to the bank which as seller was a party to the contract. Furthermore, but for the acts of the salesman Gould who as to plaintiffs was the agent of defendant bank, plaintiffs doubtless would have discovered the judgment. They suggested that the transaction be escrowed with a title company and that an abstract be secured. Gould dissuaded them by assurances that the bank customarily acted as an escrow agent, and that as they were dealing with a bank of long established and unquestioned responsibility they could rely absolutely on the title. A title report would doubtless have revealed the right of way 120 feet in width.

The defendant banks seek to avoid liability to restore to plaintiffs the amount paid on the theory that the bank which signed the contract as seller was not the real principal in the transaction, but the agent of the real owners, from whom the salesman Gould was acting, and that it merely executed contracts and deeds as directed by said owners, and turned over payments received to them. The bank held the fee title of record. It offered to prove that it held title to secure an indebtedness of the beneficial owners to it. The contract was made in the name of the bank as seller, and signed by its vice-president, without any indication that it was acting in a trust or representative capacity. Plaintiffs made payments on the contract to the bank. They did not learn of the existence of the secret trust until they demanded return of the amount paid, and were informed

that the decision lay with the beneficial owners. They dealt with the bank as principal and relied on its integrity as a long established financial institution. ■ A third party who has dealt with an agent as principal, can hold either the agent or his undisclosed principal, but cannot hold both. (*Craig* v. *Buckley*, 218 Cal. 78 [21 Pac. (2d) 430]; *Klinger* v. *Modesto Fruit Co., Inc.*, 107 Cal. App. 97 [290 Pac. 127].) In the case herein plaintiffs have elected to hold the agent as principal by bringing the action against it without joinder of the undisclosed principals. In *Gist* v. *Security Trust & Savings Bank*, 218 Cal. 581 [24 Pac. (2d) 153], the plaintiffs had joined and procured a judgment against the undisclosed principals. That case is not authority for relieving the bank herein from full personal liability where the plaintiffs have elected to hold it alone as principal.

■ The action is not barred by the statute of limitations or laches. The contract was executed on or about March 12, 1924. In May, 1929, plaintiffs consulted a builder with reference to construction of a bungalow court, and were informed that the high power wires would interfere with building. They then ascertained from the city the terms of the judgment condemning the right of way to it, and immediately thereafter made demand upon the bank for return of the amount paid. The bank seems to have been impressed with the justice of the claim, but took the position that relief should be sought from the beneficial owners. Written notices of rescission were delivered to the bank on June 12th and June 24th. Negotiations were had with reference to a settlement, but the matter was not adjusted, and the complaint was filed on August 19th. Plaintiffs acted promptly upon discovering the mistake and failure of consideration. (Sec. 1691, Civ. Code; *Gist* v. *Security Trust & Savings Bank, supra; Sherratt* v. *Hellman Com. Trust & Savings Bank*, 112 Cal. App. 542 [297 Pac. 582]; *Tracey* v. *Smith*, 175 Cal. 161 [165 Pac. 535].) Defendants cannot complain because plaintiffs did not discover the mistake sooner. They had not been in a financial position to build prior to May, 1929, and hence were not led to discover the mistake prior to that date. That plaintiffs acted in good faith is apparent from the fact that they paid $2,000 on

execution of the contract and thereafter continued to make payments until discovery of the city's rights.

The judgment is affirmed.

Shenk, J., Waste, C. J., Langdon, J., Curtis, J., Preston, J., and Thompson, J., concurred.

Rehearing denied.