[Civ. No. 1132. Fourth Appellate District.—January 15, 1935.]

MAYME H. CURTIS, Respondent, v. TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Appellant.

Keogh, Cate & Colver, William P. Mealey and Alfred E. Cate for Appellant.

Dana R. Weller and C. F. Culver for Respondent.

MARKS, J.—Respondent brought this action to enforce the rescission of two contracts for the purchase of two lots in the county of Los Angeles, and the recovery of the money which she had paid on the purchase price. She recovered the judgment from which this appeal is taken.

Respondent, a resident of Los Angeles, was a licensed realtor. Some time in November, 1927, she was interviewed by William C. Warfield, who wanted to take her to the Del Rey hills with a view of selling her some property there. Respondent did not go with Warfield but drove down to the subdivision and met him there. She found there a lecture and luncheon tent maintained by the Dickinson and Gillespie Holding Company. She attended the lecture and had lunch there. The lecturer said that the Los Angeles Lutheran University was to be established on the site; that construction was to start immediately; that the first units were to be ready for use by September 1, 1928; that it would be a coeducational institution accommodating ten thousand students who would come from all over the world and would require housing accommodations; that there would be great advantages to accrue to the owners of adjacent property from the university. After the lecture and luncheon War-

field took respondent over the property. He repeated the lecturer's statements concerning the university and its advantages to the property owners. He pointed out the location of an apartment house which he said was to be constructed within four months. This was on a site within one-half a block of one of the lots purchased by respondent. He told her that a contract had been signed for the construction of ten residences on a designated street. Numerous other statements of buildings to be erected were made. A large drawing was exhibited showing the sites of the proposed university buildings, men's and women's dormitories, athletic fields and buildings and other structures as well as the type of architecture to be used. The university site was covered with signs showing locations of the various buildings and other improvements. Respondent returned to the subdivision several times, heard several lectures describing the improvements to be made, including those we have mentioned, and others. On each occasion she saw the picture of the university buildings and the signs we have mentioned.

On February 7, 1928, respondent and appellant executed a written agreement whereby she agreed to buy from appellant one of the lots for $8,000, to be paid $2,000 in cash and the balance in five equal annual installments. Interest on deferred payments commenced on May 7, 1928, and was made payable quarterly. The second contract was dated February 11, 1928, and provided for the purchase of another lot for $6,000, to be paid $1200 in cash and $480 on August 11, 1928, with like installments to be paid every sixth month thereafter. Interest was to be paid semi-annually. Otherwise the two contracts were identical in form. Both contracts contained the following: "It is understood that this instrument contains the entire agreement between the parties hereto, and the Buyer agrees that the Seller has not, and that no agent of the Seller has made any representation or promise with respect to or affecting said property or this contract not expressly contained herein."

Respondent made the down payments and those due on August 11, 1928, and no others. In March, 1929, she discovered the falsity of the representations made to her and

served notice of the rescission of the contracts on May 10, 1929. This action was commenced on July 21, 1930.

Appellant presents the following grounds for a reversal of the judgment:

"1. Where representations are made to a purchaser by a vendor that certain improvements will be made by third persons in the vicinity of the property sold, has actionable fraud been committed if such improvements are not in fact constructed?

"2. The evidence is insufficient to support the findings that the representations made were false and fraudulent.

"3. The evidence is insufficient to support the finding that the representations were made by the defendant through its agents.

"4. Where the vendor is a trustee under a subdivision trust, is it liable for the false representations of a sales agent of the actual owner, and in particular when the contract contains a provision limiting its liability?

"5. Where the trust agreement provides that the trustee shall convey the premises upon the order of the beneficiary, is such trustee liable for misrepresentation by the beneficiary?

"6. Did the plaintiff act promptly in rescinding her contract as required by section 1691, Civil Code?

"7. The plaintiff has waived the alleged fraud by making the semi-annual payment upon her contract after knowledge that the improvements were not being made in accordance with the representations.

"8. Can the respondent herein retain the benefit of the commissions which she received and which were applied upon the purchase price of the property, and thereafter rescind and recover the full amount paid by her, including said commissions?"

The first and second specifications of error are closely related and may be considered together. Under them appellant contends that the evidence does not support the findings and judgment because, (1) the representations were made concerning future events and improvements to be constructed by third persons over whom appellant had no control and therefore amounted to nothing more than "sales talk" insufficient in law to constitute fraud, and, (2) the

only evidence of the falsity of the representations was the fact that none of the buildings and improvements had been constructed except one, completed, and two partially completed dwellings.

In support of these propositions appellant quotes the following from 26 Corpus Juris, page 1087: "An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events. Predictions as to future events are ordinarily regarded as nonactionable expressions of opinion upon which there is no right to rely, and obviously cannot constitute fraud where made in the honest belief that they will prove correct. Thus actionable fraud cannot be based upon erroneous predictions as to the future conduct of third parties, the amount a purchaser would save by use of an article purchased, or the nature of young an animal will bear; statements by a vendor as to future improvements that would be made near the property purchased such as the future location of a railroad or depot." The following cases are cited, all holding that the failure of third parties to erect buildings or make improvements will not support an action for fraud where the party making the representations has no control over the third party, and they are made in good faith: *Watkins* v. *West Wytheville etc. Co.*, 92 Va. 1 [22 S. E. 554]; *Slowthower* v. *Oak Ridge Land Co.*, (Va.) 27 S. E. 466; *Max Meadows Land & Imp. Co.* v. *Brady*, 92 Va. 71 [22 S. E. 845]; *Western Townsite Co.* v. *Novotny*, 32 S. D. 565 [143 N. W. 895]; *Day* v. *Ft. Scott Inv. Co.*, 153 Ill. 293 [38 N. E. 567]; *Stewart* v. *Larkin*, 74 Wash. 681 [134 Pac. 186, L. R. A. 1916B, 1069]; *Ames* v. *Milam*, 53 Okl. 739 [157 Pac. 941].

Section 1572 of the Civil Code provides in part as follows: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: . . . The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; . . . Any other act fitted to deceive."

. In *McMahon* v. *Grimes,* 206 Cal. 526 [275 Pac. 440], the Supreme Court said: "Conceding that Mrs. Grimes honestly thought her statements as to the character of the land were true, she was not justified in making them to the plaintiffs in order to induce the latter to purchase the land through her, for the reason that she did not have, and could not have had, any competent information that they were true. Had she made an examination of the land for the purpose of asserting the depth of its alluvial soil, and the presence or absence of hard-pan and clay thereon, she would have discovered its true character, and as such an examination would have revealed the presence of hard-pan and clay, and but a thin layer of alluvial soil, she could not have thereafter truthfully made said statements relative to the character of said soil. If she made such statements without this information or some other of equal merit, then she was guilty of fraud even if she believed they were true. As was said in *Muller* v. *Palmer,* 144 Cal. 305 [77 Pac. 954], quoting from the early case of *Alvarez* v. *Brannan,* 7 Cal. 504 [68 Am. Dec. 274], 'But it is equally true that, whether a party thus misrepresenting a material fact knew it to be false or made the assertion without knowing whether it were true or false is wholly immaterial. If a party asserts that as true which he does not know to be true, it is false representation. If he intends simply to state his belief upon information then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement in the form in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his peril, and must make good his assertion.' " (See, also, *Hill* v. *Wilson,* 88 Cal. 92 [25 Pac. 1105]; *Cooper* v. *Huntington,* 178 Cal. 160 [172 Pac. 591]; *Long* v. *Los Altos Country Club, Inc.,* 122 Cal. App. 116 [9 Pac. (2d) 600]; *Sullivan* v. *Helbing,* 66 Cal. App. 478 [226 Pac. 803]; *Mitchell* v. *Tuttle,* 102 Cal. App. 16 [282 Pac. 534]; *Boulevard Land Co.* v. *King,* 125 Cal. App. 224 [13 Pac. (2d) 864].)

The evidence before us most favorable to respondent supports the conclusion that she was told, as facts, that the Los Angeles Lutheran University would construct a coedu-

cational university on a site adjoining the subdivision in which she had purchased her lots; that construction would start immediately; that the first unit would be ready to receive students on September 1, 1928; that the other structures we have mentioned would be constructed.

The evidence shows that the following situation existed at the time the representations were made: that the corporation to erect the university had been organized; that a one hundred acre site had been selected; that a deed had been placed in escrow by the land owners to be delivered only upon the corporation having obtained sufficient funds with which to carry on its project; that a financial agent was employed to supervise the soliciting of funds from Lutherans over the United States; that it was proposed to raise for this purpose $5,000,000, of which $2,000,000 was to be subscribed in California and $3,000,000 in other states; that the fiscal agent caused various news articles to be published in various newspapers announcing the project.

The actual facts are so at variance with the representations made to respondent that the case falls well within the rule announced in *McMahon* v. *Grimes, supra.*

Appellant urges with apparent sincerity that the only evidence of the falsity of the representations made, and that they were knowingly falsely made, was the failure to construct the improvements. We do not so construe the evidence. This failure to construct the improvements was one of the circumstances to be weighed and considered by the trial judge in deciding the case.

■ Appellant's third assignment of error is not supported by the record. William P. Mealey, who had been associated as an attorney for appellant, admitted in open court that Warfield was appellant's agent. There is also circumstantial evidence supporting the conclusion that others making representations to respondent were also its agents.

■ Appellant's fourth and fifth assignments of error can be considered together as the fifth is included in the fourth.

It is true that appellant was acting as trustee in this transaction under an unrecorded declaration of trust of which respondent is shown to have had no knowledge at the time she entered into the contracts. From these con-

tracts it would appear that appellant was acting in its individual capacity as owner of the fee in the property and not as a trustee in making the sales to respondent. Where it has thus acted as, and in its contracts represented itself to be, the owner of the properties it should not be allowed to attempt to shift its responsibility by proving that it was not actually acting as owner but as trustee of an express trust under an unrecorded declaration of trust of which the purchaser had no notice.

Appellant calls our attention to two agreements delivered to respondent at the times she received her contracts and urges that these agreements disclosed to her that a trust existed. Each of these documents is entitled "Street Improvement Guarantee". Each provides that the cost of installing "Water Mains, Gas Mains, Concrete sidewalks, Concrete curbs, and rock and oil surfacing" will be paid "by Title Guarantee and Trust Company through its improvement fund of its trust No. 1136". There was nothing in either of these instruments indicating that the title to the real property was held by appellant as trustee. They related only to the improvements specified.

■ Appellant urges that the clause in the contracts of sale and purchase, which we have quoted, reciting that neither the seller nor its agent had made any representation or promise affecting the property not expressly contained in the contracts relieves it from liability for the misrepresentation of its agents.

A sharp conflict of authority on this question has existed in the decisions in this state. This conflict has been settled by the recent cases of *Speck* v. *Wylie*, 1 Cal. (2d) 626 [36 Pac. (2d) 618], and *Lozier* v. *Janss Investment Co.,* 1 Cal. (2d) 666 [36 Pac. (2d) 620]. They hold that the clause quoted cannot prevent a rescission of the contract and a recovery of the money paid with interest where actionable fraud is proven. They adopt as a statement of the correct rule in this state, sections 259 and 260 of "Restatement of the Law—Agency". In *Speck* v. *Wylie, supra,* the Supreme Court quotes from these two sections and adds its comment of approval, as follows: "Sec. 259. 'A transaction into which one is induced to enter by reliance upon untrue and material representations as to the subject-matter,

made by an agent entrusted with its preliminary or final negotiations, is subject to rescission at the election of the person deceived. . . . Comment: b. . . . The rule stated in this section applies although the other party knows or has reason to know that the agent is not authorized to make the statement. By contract with the principal, however, he may agree that the principal is not to be liable because of unauthorized statements of an agent, as stated in section 260. . . . Section 260. . . . (1.) A principal may, by contract with another, relieve himself of liability in deceit for prior or subsequent frauds of an agent to such other. (2) A contract obtained by an agent through fraudulent misrepresentations of facts may be rescinded by the other party although it provides that it shall not be affected by representations not contained therein.' Without attempting further elaboration we therefore announce that we are in accord with the above statements of the rule which will, all other things being favorable to the complaining party, allow him to rescind and to pursue the principal far enough to secure a return of the consideration paid." Under these authorities the contentions of appellant cannot be sustained.

■ Appellant's sixth ground for reversal presents the argument that respondent was guilty of laches. This is an affirmative defense which must be pleaded. It presents a question of fact to be decided by the trial judge. (*Ellis* v. *Union Trust Co.*, 219 Cal. 50 [25 Pac. (2d) 1, 2]; *Hugill* v. *Keene*, 204 Cal. 381 [268 Pac. 624]; *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515].) Although laches was not plead the issue was raised and the trial court found against it. The question being one of fact, and no abuse of discretion appearing, we are bound by the finding.

■ Appellant urges that respondent waived the fraud by making the August payment when it was perfectly apparent to her that the university and other buildings were not being constructed and that no part of the university would be ready for the reception of students on September 1, 1928. Respondent testified that when she saw the university buildings were not being constructed she talked to an agent of respondent, who explained the delay by informing her that representatives of the university were in the east raising money. This apparently quieted her

fears and she made her payments. Where the vendor by promises or representations to the vendee causes the vendee to postpone efforts to rescind the contract the vendor cannot urge the failure of the vendee to rescind within the time during which the vendee's fears of fraud have been lulled by such representations. (*Cooper* v. *Huntington, supra.*)

■ Appellant urges that even though the judgment be sustained it must be reduced by the amount of $700, this being the amount of the commissions on the sales which was paid her by appellant, together with the amount of interest on these commissions which is included in the judgment. This point is well taken.

Where a contract "was tainted with fraud—it was vitiated from the beginning". (*Ellis* v. *Union Trust Co., supra.*) The party seeking to rescind a contract must do equity and the parties must be put in the same position they occupied before the execution of the contract as far as it is possible to do. (4 Cal. Jur. 764.) The judgment in the instant case does not have this effect. Under it appellant will receive back its lots and respondent will receive back all of her own money which she expended, plus interest, and in addition will receive $700 more which she would not have had if the fraudulent contracts had not been executed.

The trial court is directed to reduce the amount of the judgment by deducting the sum of $700 paid respondent as real estate commissions on the sale of the lots to her, together with the amount of the interest on the commissions included in the judgment, and the judgment as so reduced and modified is affirmed. Neither party will recover costs of appeal against the other.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1935, and the following opinion then rendered thereon:

THE COURT.—On the record the appeal of the Title Guarantee and Trust Company is correctly decided by the District Court of Appeal.

■ In addition it may be said that the company dealt with the property as its own, received the money paid by the plaintiff, and the trial court properly found on the evidence that it was not true that said company had turned over to the alleged beneficiaries the money so paid. Acting as principal in the transaction and through its own agent the defendant made no showing that its relationship of trustee, secret and undisclosed so far as the plaintiff was concerned, should relieve it from responsibility as a principal to return the money paid by reason of the fraud of its agent, especially when, so far as the record shows, it continued to retain the money paid by the plaintiff. On the facts the case is ruled on the theory of *Wedge* v. *Security First Nat. Bank,* 219 Cal. 113, 25 Pac. (2d) 411, and *Speck* v. *Wylie, supra.* To limit the judgment to one against the defendant in its representative capacity only, as was done in *Gist* v. *Security Trust & Savings Bank,* 218 Cal. 581, 24 Pac. (2d) 153, would not be justified on the record presented.

By denying a hearing, we do not necessarily approve the apparent holding of the District Court of Appeal that laches is in every instance an affirmative defense.

The petition for hearing after decision by the District Court of Appeal is denied.

Langdon, J., and Thompson, J., voted for a hearing.